UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WAYNE LEWIS,<br>    PLAINTIFF, | :<br>:<br>: CIVIL ACTION NO. 3:11cv821(VLB)<br>:<br>: NOVEMBER 2, 2011<br>: |
| v. | |
| UNIVERSITY OF CONNECTICUT,<br>HEALTH CENTER, CORRECTIONAL<br>MANAGED HEALTH CARE<br>DEFENDANT. | :<br>:<br>:<br>: |

### MEMORANDUM OF DECISION GRANTING DEFENDANT'S [DKT. #15] MOTION TO DISMISS

The Plaintiff, Wayne Lewis ("Lewis") brings this action against his employer Defendant University of Connecticut Health Center, Correctional Managed Health Care ("UCHC") alleging that Defendant UCHC is responsible for the racially hostile work environment created by the employees of the State of Connecticut Department of Corrections ("DOC") with whom he worked in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Defendant has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's Title VII claim on the basis that Plaintiff has failed to plead facts which demonstrate that UCHC should be liable for the conduct of non-employee third parties.  For the foregoing reasons, Defendant's motion to dismiss is granted.

### Factual Allegations

The following facts are taken from Plaintiff's complaint.  UCHC provides professional health services to the inmates at the Garner Correctional Center. [Dkt. #1, Comp. at ¶15].  Lewis, an African American male, has been employed by

1

UCHC since July 24, 2004 and has held the position of Rehabilitation Therapist II at all times relevant to the present action.  [*Id.* at ¶¶16-17].  Lewis alleges that he has been subjected to a continuing course of discriminatory conduct and that on various occasions he "complained to his supervisors to no avail about the discriminatory treatment." [*Id.* at ¶¶18-19].

Lewis alleges that Defendant delayed him from being upgraded from Rehabilitation Therapist I to Rehabilitation Therapist II within one year of his hiring unlike similarly situated white employees.  [*Id.* at ¶¶21-17].

Lewis further alleges that he was subjected to a racially hostile work environment by the DOC employees with whom he worked with at the Garner Correctional Center.  In particular, he alleges that Unit Manager Marmora, a white DOC employee, would speak to Lewis in a loud and demeaning voice and refused to allow Lewis's inmate workers to enter the unit and therefore interfered with his ability to perform his job duties.  [*Id.* at ¶¶37a-i].  He further alleges that Unit Manager Marmora would complain about Lewis's handwriting as well as "monitoring his log in and out of the unit, unlike her treatment of white personnel." [*Id.* at ¶¶37p].  Lewis asserts that sometime after April of 2009 he was denied access to the unit by DOC Officer D'Allessio and Marmora because his group session was not listed on a master programming sheet while "similarly situated white employees have conducted group sessions on numerous occasions without being on the master programming sheet and without being treated in the demeaning manner in which Marmora treated the plaintiff." [*Id.* at ¶¶37r-z].

2

Lewis alleges that he was told by another Rehabilitation Therapist that DOC Lieutenant Nelson informed him that inmate workers were not allowed to be in the gym and that Lewis was instructed to do a supplemental report explaining why his detail workers were in the gym [*Id.* at ¶¶37ww-xx]. Earlier in that day, Lewis alleges that he personally witnessed the inmate detail workers assigned to Carl Ruegg, a white DOC recreation supervisor in the gym and that Carl Ruegg was not required to submit an incident report explaining their presence in the gym. [*Id.* at ¶37yy]. Lewis further claims that he "has been treated in a grossly disparate manner by the Defendant in the terms and conditions of his employment when compared to its most favorable treatment of the similarly situated white counterpart of the plaintiff, Carl Ruegg." [*Id.* at ¶41].

Lewis alleges that he complained to his supervisor UCHC's Health Services Administrator Bush about the continuing course of racially discriminatory treatment and that Bush "took no meaningful action to prevent the discriminatory treatment to which the plaintiff was subjected, merely stating, 'I know guys just be patient it will go away' or 'I would strongly suggest that you guy cross your T's and dot your I's during your shift.'" [*Id.* at ¶¶37kk-11]. Lewis alleges that Bush "never once took a stand on these blatant discriminatory, arbitrary and capricious practices to which the Plaintiff was subjected, and never reported the rampant disparate treatment to which the Plaintiff and other employees brought to his attention. [*Id.* at ¶37mm].

**Legal Standard**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

Analysis

First, Defendant moves to dismiss Plaintiff's claim regarding his delayed upgrade to the Rehabilitation Specialist II position as time-barred under Title VII. [Dkt. #15, Def. Mem. at 1]. In response, Plaintiff states that his complaint does not assert "any cause of action based solely on the denial to promote plaintiff in a timely fashion to the position of Rehabilitation Specialist II," but rather his sole claim is that he was subjected to a hostile work environment. [Dkt. # 19, Pl. Mem. at 1-2]. Accordingly, the Court need not address Defendant's arguments regarding Lewis's untimely promotion to Rehabilitation Specialist II as Plaintiff has indicated that he is not asserting a separate cause of action based on such conduct.

Second, Defendant moves to dismiss Plaintiff's hostile work environment claim on the basis that the conduct which allegedly created the hostile work environment was committed by DOC employees and argues that UCHC should not be held liable for the conduct of non-employee third parties. *See* [Dkt. #15, Def. Mem. at 5-6]. Plaintiff concedes that the conduct which forms the basis for his hostile work environment claim was committed by DOC employees, but argues that UCHC can and should be held liable for the conduct of non-employee third parties. *See* [Dkt. #19, Pl. Mem. at 3].

5

The Second Circuit has not yet specifically addressed whether an employer can be liable for the harassing conduct of non-employees but has stated in dicta that "[t]hough we need not decide the precise contours of the duty, if any, that employers owe to employees who are subjected to harassment by outsiders such as customers, such a duty can be no greater than that owed with respect to co-worker harassment."  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766-67 (2d Cir. 1993), *abrogated in part on other grounds by, National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

Therefore, other district courts in this circuit have followed the standard for co-worker liability set forth in *Quinn* in analyzing whether an employer may be held liable for the conduct of a non-employee which "provides that an employer may be held liable for the conduct of a co-worker if there is no reasonable avenue for complaint or the employer knew of conduct and did nothing about it."  *See e.g., Andersen v. Rochester City School Dist.*, No.09-cv-6259, 2011 WL 1458068, at *4 (W.D.N.Y. April 15, 2011) (citing *Quinn*, 159 F.3d at 766-67 (2d Cir. 1993)); *Bronner v. Catholic Charities of Roman Catholic Diocese of Syracuse, Inc.*, No.3:08-cv-0015, 2010 WL 981959, at *14 (N.D.N.Y. Mar. 15, 2010) ("Courts have held that an employer may be found liable for the harassing conduct of non-employees, including inmates and residents in youth centers, if the employer knew or reasonably should have known of the harassment yet failed to take appropriate corrective action") (collecting cases); *Heskin v. Insite Advertising, Inc.*, No.03CIV.2598, 2005 WL 407646, at *21 (S.D.N.Y. Feb. 22, 2005) (finding that employer could be held liable for the sexual harassment committed by a non-

employee if the employer encouraged, condoned or approved of the sexual harassment); *Kudatzky v. Galbreath Co.,* Np.96CIV.2693, 1997 WL598586, at *4 (S.D.N.Y. Sept. 23, 1997) ("it is increasingly recognized that employers may be liable for harassment committed by nonemployees in the workplace where the employer knows of the harassment but fails to act").

The Second Circuit in *Quinn* relied on the Equal Employment Opportunity Commission ("EEOC") guidelines which state "[a]n employer may also be responsible for the acts of non-employees, with respect to sexual harassment in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate or appropriate corrective action." 29 C.F.R. §1604.11(e). In determining whether to impose liability for non-employee conduct the EEOC instructs that "the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees." *Id.* Courts have referred to the EEOC guidelines as a source of persuasive guidance. *Kudatzky*, 1997 WL598586 at *4 ("While these Guidelines are not controlling, they represent a body of experience to which the courts may resort for guidance") (citing *General Elec. Co. v. Gilbert*, 42 U.S. 125, 141-42 (1976)).

Therefore as the Second Circuit in *Quinn* suggested and the other district court cases interpreting *Quinn* have held, an employer could be liable for the conduct of a non-employee in such circumstances where the employer knew of the non-employee conduct, did nothing about it and the employer exerted control or had other legal responsibility over the non-employee. *See Viruet v. Citizen*

7

*Advice Bureau*, No.01CIV.4594, 2002 WL 1880731, at *17 (S.D.N.Y. Aug. 15, 2002) (finding that employer could not be liable for conduct of non-employee client as the plaintiff failed to proffer any evidence that employer knew about client's sex-based derogatory comments towards plaintiff and that employer "could be expected to have little or no control over clients' language and behavior"); *Kudatzky*, 1997 WL 598586 at *5 (finding that employer could be liable for his client's harassing conduct since "much like a casino owner or the employer of an independent contractor," the employer could have deterred his client and his client's alleged sexual harassment of plaintiff).

Further, other circuits that have addressed the question of employer liability with respect to non-employees have also followed the EEOC guidelines in holding that an employer may be responsible for acts of a non-employee where the employer knows or should have known of the conduct and failed to take immediate and appropriate corrective action. *See e.g., Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073-74 (10th Cir. 1998) ("We agree with our sister circuits [the First, Eighth, and Ninth Circuits] that an employer may be found liable for the harassing conduct of its customers … An employer who condones or tolerates the creation of such an environment should be held liable regardless of whether the environment was created by a co-employee or a nonemployee, since the employer ultimately controls the conditions of the work environment."); *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997) ("[A]n employer may be held liable for sexual harassment on the part of a private individual, such as the casino patron, where the employer either ratifies or

acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct."); *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111-12 (8th Cir. 1997) (holding that employer, a for-profit residential home for individuals with developmental disabilities, could be liable for the sexual assault committed by a resident since the employer "clearly controlled the environment in which [the resident] resided, and it had the ability to alter those conditions to a substantial degree"); *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 854 (1st Cir. 1998) (First Circuit upheld jury's verdict for plaintiff on the basis that "employers can be held liable for a customer's unwanted sexual advances, if the employer ratifies or acquiesces in the customer's demands.").

The Second Circuit's decision in *Quinn*, the other district court and circuit court cases analyzing non-employee liability, and the EEOC guidelines concern sexual harassment as opposed to a race-based hostile environment claim. However, courts have recognized that "the same general standards apply to both race-based and sex-based hostile environment claims." *Lugo v. Shinseki*, No.06CIV.13187, 2010 WL 1993065, at *9 n.10 (S.D.N.Y. May 19, 2010) (citing *Torres v. Pisano*, 116 F.3d 624, 620 (2d Cir. 1997)).  The Court sees no reasons why these cases and the EEOC's guidelines concerning sexual harassment would not also be applicable to a race-based hostile work environment claim.

Lewis argues that the allegations in the complaint plausibly state a claim that his employer should be liable for the conduct of non-employees since he alleged that he repeatedly complained about the DOC employees' harassing

9

conduct to his UCHC supervisor Bush and that his supervisor did nothing about it. However, Defendant contends that Lewis has failed to plead sufficient facts to state a plausible claim since Plaintiff has not pled any facts alleging that UCHC exerted any control over DOC such that it would be appropriate to subject UCHC to liability for the acts of DOC employees. The Second Circuit's decision in *Quinn*, the other district court and circuit court cases analyzing non-employee liability and the EEOC guidelines clearly contemplate that an employer should only be held liable where the employer exerts some control over the non-employee conduct or where the employer may have some other legal responsibility over the non-employee conduct. Since Lewis has failed to plead any facts regarding the nature of the relationship between the UCHC and the DOC which would suggest that UCHC had the authority or the ability to take appropriate corrective action with respect to Lewis's complaints regarding DOC employees' harassing conduct, the Court finds that Lewis has failed to plausibly state a claim for hostile work environment against UCHC.

Further, the Court notes that the district court cases in this circuit and the other circuit court cases analyzing non-employee liability typically involve the conduct of the employer's clients or customers. Here, Lewis has not alleged any facts specifying the nature of the relationship between UCHC and the DOC and therefore the Court is unable to analyze whether UCHC and DOC's relationship was similar to the relationship of a customer or client which district courts in this circuit and other circuit courts have held met the threshold for extending employer liability to non-employees. Since Lewis has alleged no facts in the

complaint regarding whether UCHC exerts any control over DOC employees, the Court finds that the allegations in the complaint do not contain sufficient factual content to allow the court to draw the reasonable inference that UCHC should be liable for the conduct of DOC employees. The Court recognizes that both UCHC and DOC are agencies within the administrative branch of state government and thus ultimately subject to the dictates and influence of the Governor: however, each is a separate and distinct agency of state government independent from one another, the Plaintiff has failed to establish that UCHC had any more than the power of moral suasion over DOC. In the absence of any facts regarding the relationship between UCHC and the DOC, Lewis has failed to plausibly state a claim that UCHC should be liable for the conduct of non-employee third parties. Accordingly, Defendant's motion to dismiss is granted as to Plaintiff's hostile work environment claim without prejudice to the filing of an amended complaint that contains sufficient factual pleadings which would support an inference that UCHC exerted control or had any other legal responsibility over the conduct of DOC employees.

### Conclusion

Based upon the above reasoning, the Defendant's [Dkt. #15] motion to dismiss is GRANTED. Plaintiff is directed to file an amended complaint within fourteen (14) days of this Decision.

**IT IS SO ORDERED.**

_____/s/_____


                    **Hon. Vanessa L. Bryant**

                    **United States District Judge**

**Dated at Hartford, Connecticut: November 2, 2011**